ANDERSON, J.,
This case comes up on a motion to dissolve an injunction on bill and ánswer. The injunction was to enjoin the sale of a tract of eleven hundred and seventeen acres of land in the county of Pittsylvania, by a substituted trustee, under a deed of trust, to satisfy a debt of $4,000, and the interest which had accrued on it, and five per cent, commissions to the trustee.
One of the grounds of the injunction was, that the trustee as alleged by the bill was insolvent, and otherwise unfit for the execution of such a trust, and ought at least to be required to give security before he should be allowed to proceed with the execution of the trust. Another ground is that the land is a large and valuable tract, and ought to Be divided and sold in separate parcels. That there are now four settlements on it, and two others have been commenced, and that it might- be divided into six convenient and valuable farms. The plaintiff alleges that he knew persons who would bid for and pay a fair price for the different parcels, if sold separately, but knew of no one who would bid against the creditor, William R. Fitzgerald, if the land was sold in one body.
He alleges that the said Fitzgerald positively refused to allow the trustee to sell m any other way than for cash and the land in one body, his object being to bid it off for himself at a great sacrifice.
He also alleges that he went to the said 'Fitzgerald, and desired him to sell the land in separate lots and parcels, and proposed to advertise and sell himself, notifying the purchaser to pay the purchase money to the said Fitzgerald, but he positively refused to allow him to sell at all; and he then insisted that he should direct the trustee, *Tredway, to sell the land in different lots and parcels to suit purchasers; and he alleges that if it is fairly and properly sold in parcels, it will not require the sale of the whole to pay said debt, but enough can be sold to pay what is due, and leave him a comfortable home. The trustee himself represents the land as very fertile, and highly productive-for all crops raised in that section. “There are,” he says, “good and valuable improvements, consisting of a large dwelling house, outhouses, stables, barns, &c., &c., in fact the property is well improved, in a high state of culture, and considered one of the best farms in this whole region of country.”
Insolvency does not disqualify a person to act as a trustee, though it has not been uniformly so held. Mr. Hill says: For the
removal of an insolvent trustee, and the appointment of a new trustee in his place, a bill must be filed in a court of chancery;
*283 and the insolvency would unquestionably be sufficient foundation for such an application. Hill on Trustees, top p. 832, side 534. But in 1 Perry on Trusts, 2 ed., p. 353, § 279, it is said that generally the insolvency or bankruptcy of a trustee does not disqualify him for the trust. Yet he says that in the United States trustees are or may be required, in the great 'majority of cases, to give bonds or security for the safety of the trust fund. In McCullough & al. v. Sommerville, 8 Leigh, 415, both the trustees were wholly irresponsible individuals, owning no property of any description, and this court held that the circuit court acted with entire propriety in relieving the trustees from the execution of the trust, and in taking a control of the funds for the purpose of distribution. P. 439-40.
There were other grounds urged also m the lower court for the removal of the trustees, but this court does not appear to have sustained the removal upon them.
We think that where money of the trust fund is to pass through the hands of an insolvent trustee, upon the application *of one who is interested in the right disbursement of the money, and who is apprehensive that it may be misapplied or misused, a court of chancery ought, undoubtedly, to require of the trustee security before he is allowed to proceed with the execution of the trust. Whether the sale of the land by the trustee in this case would be a discharge pro tanto of the debtor’s obligation to the creditor, in case the trustee fails to pay over the money to him, is a question abijut which there may be different opinions. It is implied, by a declaration in the answer of Fitzgerald, that he would, in that case, consider the debtor absolved. And if that dec's ration could be regarded as a release of the debtor from responsibility in case of a diversion and misuse of the money by the trustee, he had not the benefit of it when he filed his bill, and it could not indemnify him .for any surplus the land might bring over paying the debt if used by the trustee. Suppose the land should sell for three or four thousand dollars more than the amount of the incumberance upon it, which is not an unreasonable supposition, from the trustee’s description of it, and the trustee refused to pay it over to the owner, where and to whom could he look for indemnity?
The answer does not deny the insolvency of the trustee. The trustee has not answered at all; and the creditor, in his answer. says, although the said Tredway might be utterly solvent, (which the defendant does not admit), yet such insolvency could entail no loss on the complainant, &c. On a motion to dissolve an injunction, the allegations of the bill which are not denied must be taken to be true, although they are not admitted. The allegation of insolvency, not being denied, must be taken to be true, although it is not admitted by the answer. Although the said Tredway was substituted as trustee by an order of the court, on motion of which the debtor had notice, we are of opinion that he is not thereby precluded from applying to a court of equity to require of him bond and ^security before he proceeds to execute the trust. And it would be no hardship on the creditor if it devolved on him the necessity of going his security, as it seems, according to his view, it would not increase his responsibility; and for the debtor, it is but what sheer justice requires. The bill alleges, that Samuel M. Stone was appointed trustee in the deed because he was known to the grantor to be a good business man, of high character, and a man of substance, and entirely solvent, who would act impartially and fairly in the matter. It is true that he had notice of the motion that would be made by Fitzgerald to substitute Ro. H. Tredway. his counsel, in the place of Stone, who, he represented, had refused to act. As soon as he received this notice, he went to see Fitzgerald about it, and to learn from him why he proposed to appoint his counsel, Ro. H. Tredway, trustee in place of Stone, who informed him that Stone had refused to act. He says he had never had any conversation with Stone on the subject, but has no doubt, that if he refused to act it was because of unjust requirements made of him by the said Fitzgerald. Fie avers that he would have objected to the appointment of said Tredway, trustee, if the said Fitzgerald had not induced him to believe that there never would be any necessity for the trustee to sell the said land. If he was thereby prevented from appearing in court, and objecting to his appointment, it would have been a fraud upon him, and the order appointing him ought not to be binding on him. The answer of Fitzgerald is not directly responsive to this allegation, though he “utterly denies that he ever, at any time, gave any assurance to the complainant that he did not wish to close said deed, or that he did (not) want the principal, as well as the interest, of his money;” which is responsive to another allegation of the bill. He does not deny that Tredway was his counsel, but denies that he is or has been his counsel in this proceeding since his appointment as trustee. The bill charges *“that the said Tredway is not a fit or proper person to act as trustee in the deed of trust aforesaid; that he is the counsel of the said Fitzgerald, and employed and paid by him to represent his interest entirely, and is insolvent, and ought not to be allowed to sell the land, without first giving security, even if he was a lit and proper person to act as trustee.”
A trustee, who is to act as the agent of both parties, should have no bias or partiality which would disqualify him fairly to discharge his duty, and to do justice to both parties. Where the parties agree that their respective counsel may act as trustees, it may be done. But where there is but one trustee, he ought not to be the counsel of one of the parties, especially where, as in this case, he may have to decide questions which may be of vital interest to the adverse party.
The answer does not deny the allegations before recited, that the plaintiff applied to the creditor, and also to the trustee, to have the land laid off and divided into different *284 tracts, and sold separately, and that they both refused to comply with that request. He denies only that he ordered the trustee to advertise the whole of said tract of land for sale, or that the trustee so advertised it, but affirms that he advertised strictly in conformity with the provisions of the deed so much_ of said land as might be necessary to pay the debt, and refers to the advertisement, which is made an exhibit. The advertisement is that he will sell, by way of public auction, so much as may be necessary to pay the debt, &c. He and Fitzgerald both' refused, as is alleged, the request of the grantor to divide the tract, laying it off into four, five or six different farms, for which it was well adapted, and selling them separately, or so many of them as was necessary to pay the debt, &c. And this allegation, not being denied on a motion to dissolve, must be taken to be true. The plaintiff had a right, therefore, to conclude that they had no other purpose, from the advertisement, *than to offer the whole in a body, for to do so — the creditor having no competition in the bidding — it would hot sell for more than enough to pay his debt, interest and costs, if that. Under that advertisement they might have offered it to the bidder who would pay the debt, &c., for the smallest quantity of the land, as in the sale of land for taxes. Or on the day of sale, they might have offered such part of it as they chose, and if insufficient, then offer another part of it, and so on until 'they sold enough to pay the debt. But this advertisement gives no notice to the public that it would be so offered, or how the tract would be divided, or description of the parcels that would be offered separately, so as to invite the attendance of bidders, who might wish to purchase portions of the tract.
It is true, that the deed directs the trustee to “sell the said land, or enough thereof, to pay the debt and interest then due. and the costs of sale.” The trustee being the agent of both parties, it was his duty to sell the land as a whole, or in separate parcels, as would be conducive to its bringing the most money. It was his duty to sell it so as to get the best price for it. And the deed does not prescribe any particular mode of selling it. He is only limited not to sell more than enough to pay the debt, &c. It does not provide that he shall sell it in one tract, nor does it prohibit him to sell it in parcels. We hold that it was the duty of the trustee to sell it in parcels, if by that mode it would bring the best price. And although he has a discretion, it is a legal discretion which is subject to the control of a court of equity. And if the land will bring a better price by dividing it and selling it in separate lots, and the owner desires and requests it, and the trustee refuses, the owner thereby invokes the intervention and assistance of a - court of equity, in a proper cause to control him in the exercise of his discretion. In Crenshaw v. Seigfried, 24 Gratt. Judge Moncure, speaking *for the whole court, said, If the debtor desires that a particular and designated portion of the land, fully adequate by a sale for cash to produce the amount of the debt and expenses, such desire ought to be carried into effect. In this case the debtor does not insist that only a part of the land shall be sold, or object to selling the whole if necessary for the payment of the debt and expenses,'but only insists that it shall be laid off into particular and designated portions, having assurance that it will sell better, and will not require the sale of the whole to pay the debt and expenses. The principle as laid down in the cited case, we think, clearly applies to this. In that case it was further held, that “the court in the exercise of a sound discretion, had authority to substitute a commissioner'of sale in lieu of the trustee named in the deed,” and a fortiori a substituted trustee.
The court having possession of this case ought, instead of dissolving the injunction, to have retained it, and directed the execution of the trust. It had authority to appoint commissioners • to view the land and take testimony, and to report whether it was susceptible of division into different tracts, and in what way, with power to employ a surveyor to lay it off into as many different tracts as would promote an advantageous sale. And if upon the coming in of the report, the court was satisfied, from it and the testimony, that it would be conducive to an advantageous sale to have it so divided and sold in separate parcels, it would have authority to direct that it should be advertised and sold in-such lots or parcels, and the cyder in which they should be sold, until enough were sold to pay the debt, interest, and expenses. And there is nothing in the deed which is restrictive of the power of the court, to so direct.
That such a mode of procedure would in this case conduce to an advantageous sale we must conclude from what is before us. The bill so alleges, and that allegation is not *contradicted by the answer; it ought, therefore, on this motion to have been taken as true. And that- allegation of the bill seems to be well supported by the consideration, as is alleged, if the tract is offered as a whole for cash, Fitzgerald would have no competition in bidding for it, and would get it at any price he might choose to bid, and the land would necessarily be subjected to a great sacrifice. Whereas if it were laid off into a number of small convenient farms, the plaintiff declares that there were persons within his knowledge who were able and willing to buy and pay fair prices, and he believed that in this way the sale of a part of the tract would pay the debt and costs and leave him a comfortable home; and these allegations of the bill are not denied in the answer. And why should not this just demand of the debtor be conceded to him when it could not prejudice the rights of the creditor? It seems it is prevented by the refusal of the trustee, who has not answered the bill. The creditor, in his answer, says, “As to the allegation in regard to the parceling out said land, this defendant can only say that all he desires is the payment of his debt and interest *285 and costs, and would be satisfied with the sale of any portion of said land, however small that might be, sufficient for that purpose.”
That was all he was entitled to require; and the grantor had a right to require the trustee to proceed, in a way to effect that object, by the sale of as little of the land as practicable. And the creditor does not now seem to object to it. Why, then, should it not be done?
The court is of opinion, therefore, that the circuit court, instead of dissolving the injunction, should have continued it, retained the cause, and had the sale made under its supervision and direction, as indicated by its own commissioner; and might have appointed the substituted trustee such commissioner, upon his giving bond, with security, conditioned lor the faithful execution of the trust, if not deemed otherwise unfit and disqualified for the discharge of the trust.
’¡'The court is of opinion, therefore. to reverse the decree of the circuit court dissolving the injunction, with costs, and to remand the cause to the said circuit court, to be proceeded with in conformity wi£h the principles declared in this opinion.
STAPLES and BURKS, J’s, concurred in the opinion of Anderson, J.